Mr. Chief Justice ShaRKey
delivered the opinion of the court.
The defendant in error applied to the circuit court for a mandamus., to compel the auditor to issue his warrant on the treasurer for three hundred and seventy-five dollars, alleged to be due the petitioner for a quarter’s salary. The claim was resisted, on the ground, that the petitioner was authorized to retain his salary out of any money collected by him, and that consequently the auditor was not bound to issue his warrant. This question depends exclusively on the construction of the several acts of the legislature, in relation to the appointment and duties of the state commissioner.
By the act of 1844, the governor was authorized, by and with the advice and consent of the senate, to appoint a “state commissioner.” The second section directs, that it shall be the duty of the commissioner to manage, collect, and receive the sinking fund, the town lot fund, and all other state funds outstanding, except the seminary and two and three per cent, funds, and it invests him with ample powers for the accomplishment of the end. The third section requires, that he shall quarterly render an account to the governor of his actings and doings, and of the condition of the funds under his management. The fourth section requires him to pay all moneys collected into the treasury. The act proceeds to require a bond from the commissioner, and to provide for punishing embezzlement by him; *115 and by the eighth section it is provided, that he “shall receive as a compensation for his services the sum of two thousand dollars per annum, payable out of the funds collected.”
The act of 1846 consolidated the offices of state commissioner, and of the seminary fund, which latter office had been created in 1843, and devolved the duties of both on the “state commissioner.” This act declares that the state commissioner should thereafter receive the sum of fifteen hundred dollars per annum, to be paid as heretofore provided by law.
The act of 1843, which created the office of commissioner of the seminary fund, did not fix the amount of his salary, but left the sum blank. The act of 1844, however, declared that the commissioner of the seminary fund should receive the sum of fifteen hundred dollars per annum, payable quarterly out of the funds collected, on the requisition of the governor.
Now the question is, What rule is to be gathered from these acts in regard to the payment of the commissioner’s salary? Judging from the record and the argument the auditor refused to issue his warrant, because he regarded it as the duty of the commissioner to retain, out of money collected by him, the amount of his salary, and that when it was once paid into the treasury, it could not be paid out. In this view we cannot concur. We regard the law as only indicating to the proper officer the fund out of which the commissioner should be paid, after the money had been paid in ; or, in other words, as directing to what account the disbursement should be charged. The act of 1844, which authorized the appointment of the state commissioner, is to be the main guide in the matter, as the act of 1846 does nothing more than change the amount of the salary, and directs that it should be paid as before provided, having reference no doubt to the mode prescribed in the act of 1844. The language of the eighth section above quoted, seems to be a plain guide in this matter. “ The said commissioner shall receive as a compensation for his services,” &c. To receive is not to retain, but it implies payment by some other person. The word retain has a very different meaning, to wit, to hold that which one already has. The statute does not use *116 this word; if it had done so, the case would have been plain enough. And we cannot suppose the legislature intended to be understood as giving authority to retain, or it would have said so. But the subsequent part of the section says, that it shall be “ payable out of the funds collected.” This language again implies the agency of the proper disbursing officer; the salary was not retainable, that is, to be held by the party who collected the money, but it was payable, that is, to be disbursed by the proper officer. But the matter is made still plainer by the fourth section, which directs that the commissioner, whenever moneys may be received or collected by him, shall pay the same into the state treasury. This duty was not to be performed at stated times, but so soon as the money was received. This duty is inconsistent with the privilege of retaining. If this officer may retain his salary, he may do so, to the full extent, out of the first money that might come into his hands, and thus receive his salary in 'advance. If the legislature had intended to give this effect to the law, no doubt its language would have been more explicit. It may so happen that the commissioner will fail, in the course of a year to collect any thing; how then could he retain 1 or is he under such circumstances to lose his salary 1 Certainly not; it would be payable out of any of the particular funds designated, which might happen to be in the treasury. But another most conclusive answer may be given. Some of the debts to be collected by the commissioner are payable not in money, but in the securities of the state. It never could have been intended that he should retain these securities in discharge of his salary.
But it has been also insisted, that the funds to be collected by the commissioner, are trust or pledged funds, that cannot be diverted from their purpose when they once come into the treasury, but must be appropriated to the specific purposes designated. If this be-true, the pledge must be equally operative as soon as the commissioner collects them. They are trust funds in his hands, and he could not retain. The state must act through its agents; a collection by the commissioner is a collection by the state, and if the state be a trustee, the trust *117 attaches as soon as the fund comes into the hands of its authorized agent. But if the position taken were true, what would be the consequence? The state must act in good faith, and if it has pledged a fund for the payment of a salary which it could not pledge, or so locked up the fund that it cannot be appropriated to the discharge of the salary, then it must be paid out of any money in the treasury. The agreement to pay would then be binding and. stand without any qualification, But suppose the state commissioner were entitled to retain, and. instead of doing so, had paid the money into the treasury, is he for that reason to be excluded from his salary? Surely not. By law he is entitled to his salary, to be paid out of a particular fund; if that fund has gone into the treasury, either through his hands or the hands of others, he has a clear legal right to draw it out, and having such right, the auditor should issue his warrant. It is in effect the same thing as if he had retained the amount.
None of the acts above referred to authorize quarterly payments, and if there were no other provision, it might be very questionable whether, the commissioner would be entitled to draw his salary before the end of the year; but the law regulating the duties of the .treasurer settles this question, by providing that he shall pay all salaries quarterly, on the auditor’s warrant, unless the law expressly direct otherwise. Under this law, the auditor would be authorized to issue his warrant, because, without it the treasurer could not discharge a duty expressly required of him. The law is an authority for both officers. Hutch. Code, 397.
The judgment of the circuit court was wrong in one particular; it directed the warrant to issue payable out of any money in the treasury collected by this commissioner. It should have been payable out of any of the designated funds in the treasury, and the judgment of this court must be so entered.